20-311 and 21-532 will be decided by Judge Walker and myself. Judge Robinson is recused. She will be coming up to the bench after this, going into recess after this case. So, why don't we start, should we disagree, then we'll have to take, we'll have another judge come in, and we'll have to figure out how that's going to handle, how we'll handle that. Yeah, thank you for that, yes. That's, those are the court rules, that if we are in agreement, the remaining two members of the panel can decide the case by themselves, otherwise we would have a third judge in randomly by the clerk's office. So, why don't we proceed. For the appellant, we have Mr. Joyce, and I understand you would like to reserve two minutes for rebuttal, and then for appellee, I understand we have Ms. Brown. So, why don't we please proceed. Your Honor, may I remove my mask as I address the court? Yes, and I'm sorry, I should have said that in advance. So, the way that the COVID protocols work right now are that anyone who is at the podium is free to remove the mask. If you would like, you don't have to remove the mask. The one thing we would ask is just please make sure that you tilt the microphones up so that we can hear you, because this is also being live streamed. We want to make sure that your voice is picked up on audio. When you're done speaking at the podium, and you sit back at council table, we'd simply ask you to replace the mask. So, thank you for reminding me. May it please the court. My name is Patrick Joyce, and I represent the appellant in this case, Gabriel Guillen. As the court has noted, I have requested two minutes of rebuttal time. Consider this quote. Without diminishing the seriousness of this case, we believe a variance from the guidelines is warranted. I'm sorry. One second. Did you say you represent? Gabriel Guillen. I'm sorry. I thought you said Diaz. We do have another case on the calendar for Diaz. I wanted to make sure we hadn't called the wrong case. I apologize. Please go ahead. The quote continues. In an attempt to avoid unwarranted sentencing disparity among defendants, as such, we recommend a sentence of 240 months. You might think that that was an advocate for the defendant, or maybe even the defendant's pre-sentence memorandum. Instead, that was actually the pre-sentence recommendation by the Department of Probation in this case. And yet, even though they recommended 240 months, Mr. Guillen still received a sentence of 312 months. I am not sure what that point represents. You're not suggesting that the probation officer's recommendation is somehow binding on a district court? I'm not sure where you're going with that point. Well, Judge, it emphasizes that in this situation, the unwarranted disparity which Mr. Guillen received in sentencing... ...disagreed with the probation office constitutes evidence of disparity. I don't see the syllogism there. I see why you could argue that there are disparities. But I don't understand why the fact that a particular view was espoused by the probation office... Have we ever held that that's probative of anything? Oh, it's always probative, Judge. It is one of the factors... Have we ever reversed a district judge's sentencing determination because we thought they ought to have deferred in any way to a probation officer's judgment? Never. Okay. So why don't you talk about the merits of why the sentence presented a disparity, not the fact that the district court disagreed with the probation officer? I will get to that point, Your Honor. There's really two points that we believe that this case should be reversed and remanded on grounds that the sentence was substantively and procedurally flawed. First is the unwarranted disparity, and second is that procedurally, relying upon the uncorroborated testimony of this confidential informant was a procedural mistake coupled with the limiting of the cross-examination. But I'll address the court's issue regarding sentencing disparity. For a moment, consider Mr. Jimenez. He was the main supplier of this drug trafficking organization. He was a person who was similarly situated in the fact that his criminal history category equaled three points. At the time of his arrest, he had in his location scales, fentanyl and heroin, a certain amount of cocaine, and in fact, he was charged with distributing up to 150 kilograms of cocaine. Even more importantly, at the time of his arrest, Mr. Jimenez was in possession of a .45 caliber pistol. At the sentencing of Mr. Jimenez, the district court said that she felt as though he was a supplier and a wholesaler, and in fact, it was a little extraordinary in terms of his situation in terms of sentencing. But at that point, the district court said, I don't want to, I would like to avoid sentencing disparity, so therefore, I'm going to sentence you to 176 months. That's 14 and a half years. This is the supplier of the drug trafficking organization. Mr. Guillen, whose record also takes him to criminal history category three, in his past had a conditional discharge for possession of a controlled substance at the state level, and he had a prior felony conviction in federal court for distribution. On that case, that earlier case, Mr. Guillen received five years in jail. The court, when addressing the disparity issue, said only this, Mr. Guillen is in a unique position. We understand that the court found that he was a manager. We understand that that does make him, I guess the phrase unique, the word unique was used. But 26 years compared to 14 years, the word unique is not satisfactory, Judge, to explain that disparity. The statute is very clear. When there are individuals who are similarly situated, and I suggested to the court that both Mr. Jimenez and Mr. Guillen were extremely similarly situated, the 12-year difference in their sentence is overwhelming. This court addressed a situation where the district court sentenced an individual to a much lower sentence than the guideline had suggested. In the Lynn Stewart case, the court addressed the issue about whether or not a district court judge took in the full panoply of facts faced with it when coming to the conclusion that Ms. Stewart should get 28 months in jail. The court there specifically recognized that, in fact, due deference is given to the district court. But the court also significantly noted that such discretion is not boundless, and that, in fact, the reason the circuit court is where it is is so that it can correct mistakes of this nature. Any analysis that applies to the fact that a district court judge sentences an individual to less time than the court thinks is the same analysis that should apply when a sentencing judge sentences an individual to much higher than one would think in this particular situation, where a co-defendant receives 14 years and he receives 26 years. I would also point out that Judge Rakoff, who often sits on this panel, said in a case just last year, the case is Cabrera, that a 240-month sentence is longer than the median sentence for murder in this court. And, in fact, throughout the country, a 240-month sentence is more than what most murderers get. With Mr. Guillén, there was no gun involved. There was no violence involved. Like probation, I'm not diminishing the seriousness of the case, but I'm suggesting that a sentence of 312 months was not consistent with the statutory duty to ensure that there was not unwarranted disparity among civilly situated defendants.  Thank you very much. Can you reserve two minutes for rebuttal? Yes. Why don't we hear from the government? Good morning. May it please the court, my name is Margaret Graham and I represent the government on appeal. Gabriel Guillén's conviction and sentence should be affirmed. Judge Wood imposed the sentence after a two-day Fatico hearing, which included testimony from one of Guillén's co-conspirators, numerous exhibits, and reference to a voluminous trial record from the trial of one of Guillén's co-conspirators.  Yes, the disparity, as Judge Wood carefully noted during her sentence, the defendants were not similarly situated in several important ways. Jiménez was a supplier. Gabriel Guillén was the leader. In fact, he received an enhancement for leading the organization of more than five people. He ran the drug trafficking organization. He maintained premises. And he did all of this while on supervised release from his prior federal drug conviction. So not only were the guidelines quite different for the two of them. Was there any other supplier or was it just Jiménez? Jiménez was the only other charged supplier. There were other suppliers about whom there was testimony. Well, we're dealing with a record here. Yes, Your Honor. Jiménez was the only charge. Normally a supplier is considered more culpable than his distributee, right? I mean, normally you'd think, in a simple situation, say I was starting on the street. You know, one guy is out there distributing drugs and is guilty of possession of a potential distributee. But he has a supplier who's further up the hierarchy and thus is considered to be more culpable. How is this different? Yes, Your Honor, this is a slightly different factual situation. Mr. Guillén himself was actually a wholesale supplier. So he was receiving drugs from Mr. Jiménez as well as others, not exclusively from Mr. Jiménez. So it was not a situation where Mr. Jiménez was above him or necessarily dealing more. But Mr. Guillén was very much, he was not a street dealer. He was, in fact, running an organization of multiple individuals who did that work for him. And there were, what, six in the organization that were identified, is that right? Yes, Your Honor, there were at a minimum six people. He maintained a premises, he maintained apartments out of which, where he directed people in packaging and then dealing and distributing the drugs for him. He paid them salaries to do so. So Mr. Guillén was very much not a street-level dealer. Because I do understand Your Honor's point, but the facts are not that here. Okay. Thank you, Your Honors. If the Court has no further questions, I'll cede the remainder of my time. No, that's very good. Thank you very much. Thank you. Mr. Joyce, you've reserved two minutes for rebuttal. Why don't we hear from you? Thank you, Your Honors. Referring again to the Stewart case, Stewart referred to the case of Ratobali, where the Court said unjustified reliance upon any one factor is a symptom of an unreasonable sentence. And I believe in this particular situation, reliance upon the fact that Mr. Guillén was found to be a manager is exactly that unreasonableness. I'm going to refer to the probation report, not that the Court should have taken it as viable, but as instructive. The probation officer, when recommending 240 months, suggested that Mr. Guillén did not learn from the time before. And in that time before, he received a five-year sentence. So you might suggest that, oh, you didn't learn in five years? We'll double your sentence.  Or maybe you didn't learn your lesson. We're not in a position to sentence him. We're not in a position to re-sentence him. The question is whether the District Court abused her discretion here. She had wide discretion as to imposing the sentence and could weigh the 3553A factors that she saw fit. And we can't really re-weigh those factors. We have to look at whether what she did was reasonable. And you can also remand for re-sentencing. And I would suggest, Your Honor, when you talk about reasonableness, and again, going back to the... You're saying, in effect, she abused her discretion and acted unreasonably with her sentence. Correct? I'm sorry, I didn't understand. You're saying that she acted unreasonably in imposing the sentence and abused her discretion. That's correct. In doing that. That's correct. And I would suggest that, Your Honor, if you think about his prior sentence of five years, the only time he spent in jail, he's now spending five times that amount in this particular sentence. Well, we don't know the circumstances, at least I don't know the circumstances of that prior case. How many drugs were involved, whether he was a manager of that situation or not. You know, so maybe you can enlighten me on that. Maybe if he was engaged in the same conduct, prior crime, then I think you might have a point. But if he simply violated the narcotics laws and was sentenced to five years based upon a straightforward violation, that's a different matter, isn't it? I see my time is out. Go ahead, answer the question. Your Honor, in that situation, my point is this. Regardless of what his role was in the five-year sentence, the fact that the district court here sentenced him to five times that amount I think was unreasonable and an abuse of discretion. And for those reasons, we ask that the court remand for a resentencing. Thank you very much. Thanks very much, both of you. We will stand in recess very briefly.